UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | CASE NO. 5:10CV2022 |
| Plaintiffs, | ) ) | JUDGE JOHN R. ADAMS |
| vs. | ) ) ) | |
| $57,888.00 IN U.S. CURRENCY, | ) ) | **MEMORANDUM OF OPINION AND ORDER** |
| Defendants. | ) ) ) | [Resolving Doc. 8; Doc. 9] |

This matter, a civil forfeiture action, is before the Court on a motion to strike claim by the United States. Doc. 8. The matter relates to an airport security screening in which a Transportation Security Administration agent discovered within a carry-on suitcase the defendant currency in three vacuum-sealed plastic bags. Doc. 8 at 2. The United States argues that the claimant Robert Coore, the individual that attempted to pass through airport security with the suitcase, lacks statutory standing to challenge the forfeiture because his complaint does not state his interest in the property. Doc. 8 at 9. For reasons discussed below, the Court finds that Mr. Coore has failed to demonstrate the requisite Article III standing to contest the forfeiture action. Accordingly, the government's motion to strike claim is GRANTED, Mr. Coore's Answer (Doc. 9) is STRICKEN, and the Court DIRECTS the government to move for default within fourteen days.

**I.  BACKGROUND**

The government alleges the following facts. On November 20, 2009, at approximately 5:00 a.m., an unidentified person known only as "Andrew LNU" (last

name unknown) dropped claimant Robert Coore off at the Akron/Canton airport. Doc. 1 at 1. Mr. Coore was scheduled to fly from Akron to Denver, Colorado, and from Denver to Santa Ana, California. Doc. 1 at 2. After arriving at the airport, Mr. Coore proceeded to the gate screening area with his boarding passes and a carry-on suitcase. Doc. 1 at 2.

As Mr. Coore's suitcase was going through the security screener, the Transportation Safety Administration ("TSA") agent detected a dark mass in his suitcase. Doc. 1 at 2. The dark mass turned out to be three vacuumed sealed plastic bags wrapped with carbon copy paper. Doc. 1 at 2-3. Drug money couriers commonly use carbon copy paper to absorb narcotic odors present on drug money. Doc. 1 at 3. Inside the plastic bags, the TSA agent discovered the defendant U.S. currency, totaling $57,888.00. Doc. 1 at 3. The TSA agent brought the defendant currency to the attention of the on-duty Summit County Sheriff's Office ("SCSO") deputy, who then asked Mr. Coore about the money. Doc. 1 at 3. Mr. Coore stated both verbally and in writing that he did not know anything about the money in the suitcase. Doc. 1 at 3.

Thereafter, the SCSO deputy notified a Drug Enforcement Agency Task Force Officer ("DEA TFO") who, upon arrival, advised Mr. Coore that he was not being detained. Doc. 1 at 3. However, the SCSO said that he would like to ask Mr. Coore some questions about the defendant currency. Doc. 1 at 3. According to the government, Mr. Coore immediately stated that the money in the suitcase was not his and that he was borrowing the suitcase from a friend. Doc. 1 at 3. The officer informed Mr. Coore of his intention to take possession of the defendant currency because Mr. Coore stated that it was not his. Doc. 1 at 3. Upon being asked by the officer if he would like a receipt for

the money, Mr. Coore allegedly said, "The money is not mine. I do not need one." Doc. 1 at 4.

The DEA TFO proceeded to ask Mr. Coore to identify the owner of the suitcase. Doc. 1 at 4. Mr. Coore identified an individual named "Charlton Anderson" and told the DEA TFO that he received the suitcase from Mr. Anderson after returning a truck he drives for Mr. Anderson to a truck yard owned by Mr. Anderson called Everett Trucking. Doc. 1 at 4. Mr. Coore also told the DEA TFO that Mr. Anderson arranged for Mr. LNU to take him from a friend's house to the airport. Doc. 1 at 4. At this point, the DEA TFO offered to arrange for Mr. Coore to take another flight. Doc. 1 at 4. Mr. Coore purportedly told the officer that there was no longer any need for him to fly. Doc. 1 at 4. Finding this last statement to be inconsistent with Mr. Coore's statement that he borrowed the suitcase from a friend, the DEA TFO seized the defendant currency. Doc. 1 at 5. The money was transported to the Summit County Drug Unit Office where a narcotics dog positively identified narcotic odor on the currency. Doc. 1 at 5.

On September 10, 2010, the government filed a complaint in forfeiture under 28 U.S.C. § 1355(b)(1), naming the $57,888.00 in U.S. currency as defendant. Doc. 1 at 1. The government alleges that the defendant currency is subject to forfeiture under 21 U.S.C. § 881(a)(6) because it "constitutes proceeds from illegal drug trafficking activities, and/or was used or was intended to be used in exchange for illegal controlled substances." Doc. 1 at 2. On October 19, 2010, Mr. Coore filed a claim to the defendant currency. Doc. 6. The government then moved to strike Mr. Coore's claim on November 2, 2010, for lack of statutory standing, as required under Supplemental Admiralty and Maritime Claim Rule G(5)(a)(i)(B). Doc. 8 at 1. On November 12, 2010,

Mr. Coore filed a response to the government's motion to strike claim, arguing that the seizure of the defendant currency was illegal and that he has standing because the defendant currency was in his possession when seized. Doc. 10.

## II. LEGAL STANDARD

A person asserting an interest in property subject to a forfeiture action *in rem* arising from a federal statute may contest the forfeiture by filing a claim in the court where the action is pending. SUPP. ADMIRALTY AND MAR. CLAIM R. G(1), (5)(a)(i). The claim must: identify the specific property claimed, identify the claimant and state the claimant's interest in the property, be signed by the claimant under penalty of perjury, and be served on the government attorney designated under Rule G(4)(a)(ii)(C) or (b)(ii)(D). *Id.* at (5)(a)(i)(A)-(D). At any time before trial, the government may move to strike a claim for failure to comply with Rule G(5) or because the claimant lacks standing. *Id.* at (8)(c)(i)(A), (B).

A claimant contesting a civil forfeiture action must have both Article III standing and statutory standing. *United States v. $515,060.42 in U.S. Currency*, 152 F.3d 491, 497 (6th Cir. 1998). A claimant establishes statutory standing by complying with the requirements of Supplemental Admiralty and Maritime Claims Rule G(5)(a)(i). A claimant contesting a forfeiture must first demonstrate a "sufficient interest in the property to give him Article III standing; otherwise, there is no 'case or controversy,' in the constitutional sense, capable of adjudication in the federal courts." *United States v. $38,000.00 in U.S. Currency*, 816 F.2d 1538, 1543 (11th Cir. 1987). Thus, contrary to Mr. Coore's arguments, without Article III standing, the Court cannot consider the merits of his claim, including whether the seizure of the defendant currency was legal. *Id.*

In order to have Article III standing, a claimant must demonstrate a "colorable ownership, possessory or security interest in at least a portion of the defendant property." *$515,060.42*, 152 F.3d at 497. A property interest less than ownership may be sufficient to create standing. *Id.* at 498. Claims of "naked possession," however, are insufficient to establish Article III standing. *Id.* Accordingly, "the assertion of simple physical possession of property as a basis for standing must be accompanied by factual allegations regarding how the claimant came to possess the property, the nature of the claimant's relationship to the property, and/or the story behind the claimant's control of the property." *Id.* (citing *United States v. $321,470.00 in U.S. Currency*, 874 F.2d 298, 301, 304 (5th Cir. 1989) ("a courier carrying cash from an unknown owner to an unknown recipient, resolute in his determination to give no explanation except that he was asked to transport cash, the ideal mule for drug traffickers, must be prepared to demonstrate that he has a lawful possessory interest")).

## III.  DISCUSSION

In relevant part, Mr. Coore's claim states that "I, Robert Coore, of 4217 Colony Road, South Euclid, Ohio 44121, the person from whose possession and control the $57,880.00 in U.S. Currency (involved in this matter and referred to above) was seized by member of the Summit County Sheriff's Office, hereby formally lodge a **Claim** for the described monies. . . . Indeed, given that the funds centralized in this matter were in my possession . . . there is no way the Government can prevail in any forfeiture action." Doc. 6 at 1-2 (emphasis in original). Nowhere in Mr. Coore's claim or his response to the government's motion to strike claim does he explain how he came to possess the defendant currency in his carry-on suitcase. Nor does Mr. Coore explain the nature of his

relationship to the defendant currency or the story behind his control of the defendant currency. As such, the Court finds that Mr. Coore's claim is no more than a claim of naked possession. Accordingly, the Court concludes that Mr. Coore lacks the requisite Article III standing required to challenge the forfeiture of the defendant currency.

As previously stated, the Court need not consider whether the government had probable cause to seize the defendant currency since Mr. Coore lacks the requisite Article III standing to lodge a claim for the defendant currency in the first place.

## IV.    CONCLUSION

For the foregoing reasons, the United States' motion to strike claim is GRANTED. Doc. 8. Accordingly, Mr. Coore's Answer (Doc. 9) is STRICKEN, and the Court DIRECTS the government to move for default within fourteen days.

IT IS SO ORDERED.

DATE: July 21, 2011            */s/ John R. Adams*_____
                               Judge John R. Adams
                               UNITED STATES DISTRICT COURT